```
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X
                                         :
ARMANDO GUZMAN, SR.,                     :
                    Plaintiff,           :
                                         :    10 Civ. 1048 (DLC)
         -v-                             :
                                         :    OPINION & ORDER
THE CITY OF NEW YORK and RAYMOND KELLY,  :
Commissioner, City of New York Police    :
Department,                              :
                    Defendants.          :
                                         :
-----------------------------------------X
```

APPEARANCES:

For plaintiff:
Armando Guzman, Sr., pro se
955 East 163rd Street
Apartment #2B
Bronx, NY 10459

For defendants:
Brian Jeremy Farrar
NYC Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

Plaintiff Armando Guzman, Sr. ("Guzman"), proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 against The City of New York ("the City") and Commissioner of Police Raymond Kelly ("Kelly"). Guzman alleges that the defendants violated his constitutional rights by, inter alia, failing to respond to allegations of police misconduct and promulgating official policies that promoted unconstitutional conduct by subordinates.

The defendants have moved to dismiss the complaint.  For the following reasons, the motion to dismiss is granted.

BACKGROUND

The following facts are taken from the plaintiff's complaint, and assumed to be true for the purposes of this motion.  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  On July 9, 2007, Guzman was involved in a physical altercation with an unknown man, later identified as Felix Guzman ("FG," no relation to the plaintiff).  Around midnight, FG attempted to enter the Guzman apartment.  Initially rebuffed, FG returned brandishing a weapon.  After a fight, Guzman ejected FG from the apartment.  A short time later, when Guzman was outside his apartment complex, FG snuck up on him.  In self-defense, Guzman struck FG a single time in the head.  When FG fell back, hit his head on the sidewalk, and did not move, Guzman asked his family to call an ambulance.

The next day, New York City Police Department ("NYPD") detectives from the 48th Precinct went to the Guzman apartment to interview Guzman.  Guzman learned of the visit and called the 48th Precinct to convey his intent to cooperate with the police.  The same day, two NYPD detectives returned to the Guzman apartment and gained entry by threatening Guzman's young step-

2

son.  When Guzman's wife arrived, she told the detectives that Guzman would talk to them on his "own time table and not that of the police time table."  The detectives then took Guzman's spouse and two other family members to the 48th Precinct for questioning.  Guzman's family was not allowed anything to drink or given an opportunity to talk to an attorney.

On July 11, 2007, Guzman was arrested.  On July 12, Guzman was charged with manslaughter in the first degree and assault in the first degree.  The charge required "an intent to cause serious physical injury by means of a deadly weapon or a dangerous instrument."  There was, however, no evidence that Guzman had used such a weapon when he struck FG.  Guzman alleges that NYPD detectives, in collusion with Assistant District Attorney Danny Kraft ("Kraft"), gave false testimony.  On August 3, Guzman was informed that a Grand Jury had indicted him with a single count of manslaughter in the first degree.  Guzman was detained nearly three years.

On August 7, 2007, Guzman forwarded to the Bronx County District Attorney ("DA") Robert Johnson ("Johnson") a grievance filed with the Civilian Complaint Review Board regarding the NYPD's mistreatment of Guzman's family.  Guzman later received threats that if he did not withdraw the grievance, his family would "undergo an unspecified form of hardship."  The complaint does not specify how these threats were received or who might

3

have sent them.  Guzman immediately filed a grievance with the New York Supreme Court Appellate Division disciplinary panel against Kraft.  On November 7, Guzman, having concluded that DA Johnson was covering up Kraft's misconduct, filed an application with the Office of the New York State Attorney General for the appointment of a special prosecutor to investigate the NYPD detectives who had interviewed Guzman's family.  On November 14, Guzman filed a Freedom of Information Act request with the NYPD seeking the names of the NYPD detectives who had interrogated his family.  Guzman sent a copy of this request to Kelly but received no response from him.  Guzman alleges that Kelly instructed an unnamed records access officer to withhold this information.

On January 5, 2008, Guzman filed a formal grievance with the NYPD directly addressed to Kelly.  It demanded an investigation into collusion between the NYPD and the Bronx County DA's Office and the filing of false charges against Guzman.  He never received a response from Kelly.  Guzman alleges that Kelly pursued a cover-up.

On May 12, 2009, Guzman filed a grievance with the Chief of the Civil Rights Unit of the United States Attorney's Office for the Southern District of New York, alleging collusion between the NYPD and the Bronx County DA's Office to falsely charge Guzman.

4

On February 9, 2010, Guzman commenced this lawsuit, seeking injunctive relief, declaratory relief, and more than $30 million in compensatory, punitive, and special damages for his loss of liberty, financial support, and companionship to his family.

On July 14, this case was stayed pending the outcome of Guzman's criminal trial.  In a December 13 letter, the defendants informed the Court that Guzman was acquitted at trial.  On December 15, Guzman's claims of prosecutorial misconduct against Johnson were dismissed and Guzman was given until January 14, 2011 to submit any amended complaint.  See Guzman v. City of New York, No. 10 Civ. 1048 (DLC), 2010 WL 5129066 (S.D.N.Y. Dec. 15, 2010).  In addition, an Order of December 16, 2010 directed Guzman to provide an up-to-date address to this Court's Pro Se Office.

Guzman did not file an amended complaint, nor did he update his address information.  On February 13, the defendants moved for dismissal of all claims against the two remaining defendants.  In an order dated February 28, Guzman's complaint was dismissed without prejudice for failure to prosecute.

On March 4, the Court received a letter dated January 2 from Guzman indicating that he wished to continue to pursue his claim.  By an Order of March 8, the Court reopened the case and ordered Guzman to file any opposition to the defendants' motion to dismiss by April 1.  Guzman did not submit any opposition.

5

DISCUSSION

Defendants have moved to dismiss Guzman's complaint on two grounds.  First, that the plaintiff fails to state a claim against Kelly.  Second, that any municipal claims against the City fail as a matter of law.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (citation omitted).  Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro, 570 F.3d at 475.  Moreover, pleadings filed by pro se plaintiffs are to be construed liberally. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted).  The rule favoring liberal construction of pro se submissions is especially applicable to civil rights claims.  See Weixel v. Bd. of Ed. of the City of New York, 287 F.3d 138, 146 (2d Cir. 2002).  A complaint must do more, however, than offer "naked

assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 129 S. Ct. at 1949-50. Accordingly, a court may disregard "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  Id. at 1940.

I.   Claims Against Kelly

The defendants contend that the claims against Kelly fail to provide sufficient factual support for his personal involvement in any constitutional wrongdoing.  Broadly construed, the complaint alleges that Kelly failed to respond to Guzman's grievances about police misconduct and malicious prosecution, instructed a subordinate to withhold from the plaintiff the identity of certain NYPD officers, and promulgated a policy that promoted discriminatory and unconstitutional conduct by police officers against racial minorities and persons of low-income.  Because the complaint's assertions neither constitute a violation of § 1983, nor plead sufficient facts of Kelly's personal involvement beyond "naked assertions devoid of further factual enhancement," Iqbal, 129 S. Ct. at 1949, Guzman's claims against Kelly must be dismissed.

Section 1983 provides in part that

> [e]very person who, under color of any statutes, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured.

42 U.S.C. § 1983.  "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights."  Zherka v. Amicone, 634 F.3d 642, 644 (2d Cir. 2011) (citation omitted).  A defendant's conduct must be a proximate cause of the claimed violation in order to support a claim that the defendant deprived the plaintiff of his rights.  Martinez v. California, 444 U.S. 277, 285 (1980).  It is "well settled" that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted).  As a consequence, "the doctrine of respondeat superior . . . does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity."  Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003).

In Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), the Second Circuit identified five ways in which a supervisory

8

official may be personally involved in a violation of constitutional rights.  Id. at 873.  Liability may attach to a supervisor who

> (1) [d]irectly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

Iqbal v. Hasty, 490 F.3d 143, 152-53 (2d Cir. 2007) (citing Colon, 58 F.3d at 873), rev'd on other grounds, Iqbal, 129 S. Ct. 1937.

In Iqbal, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S. Ct. at 1948 (emphasis supplied).  The Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," because that "conception of supervisory liability is inconsistent with [the principle that supervisors] may not be held accountable for the misdeeds of their agents."  Id. at 1949.  "Absent vicarious liability, each Government official, his or her title

notwithstanding, is only liable for his or her own misconduct." Id.[1]

Guzman has not asserted that Kelly was personally involved in the police or prosecutorial misconduct that Guzman alleged in the complaint.  To the extent that Guzman's claims rest on allegations that Kelly failed to respond or investigate Guzman's grievances, they must be dismissed for failure to allege a claim against Kelly under § 1983.

> [A]fter the fact notice of a violation of an [individual's] right is insufficient to establish a supervisor's liability for the violation.  Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the [constitutional violation] suffered by [Guzman].

Rahman v. Fischer, No. 09 Civ. 4368 (DLC), 2010 WL 1063835, at *4 (S.D.N.Y. Mar. 22, 2010) (citation omitted).  Accordingly, Guzman's § 1983 claims against Kelly for deliberate indifference are dismissed.

As to Guzman's claim that Kelly instructed an unnamed subordinate to withhold information in order to thwart Guzman's submission of grievances, the complaint fails to allege sufficient factual material beyond "mere conclusory statements."

---

[1] The Supreme Court's decision in Iqbal arguably casts doubt on the continued viability of some of the categories set forth in Colon v. Coughlin.  For the purposes of this case, however, it is not necessary to explore this issue because the complaint fails to plead personal involvement under any of the Colon categories.

Iqbal, 129 S. Ct. at 1940.  The complaint contains only the bare assertion that Kelly ordered an unnamed subordinate to withhold information, and the conclusion that Kelly "obviously pursued a cover-up of the entire reported complaint matter."  Without additional factual support, these statements do not rise above the speculative level to plausibility and are thus insufficient to support a § 1983 claim.  Id.

Finally, Guzman's claim that Kelly promulgated policies and practices that allowed unconstitutional conduct by subordinate officers also fails.  The complaint principally alleges that Kelly promoted police officers' infringement of the constitutional rights of racial minorities and the poor by refusing to pursue investigations or sanction subordinates.  The complaint contains only the bare assertion that a policy exists, and the conclusion that Kelly was responsible for it.  Without "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," id., the claim must be dismissed.

II.  Municipal Liability

Guzman also asserts a § 1983 claim against the City, alleging that the City promulgated a policy and custom of falsification of police reports and discrimination against racial minorities.  The complaint alleges that the City failed

11

to train and supervise its police officers, thereby promoting such constitutional violations.

"Section 1983 'imposes liability on a government that, under color of some official policy, "causes" an employee to violate another's constitutional rights.'"  Okin v. Village of Cornwall-on-Hudson Police Dep't., 577 F.3d 415, 439 (2d Cir. 2009) (quoting Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 692 (1978)).

> Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.

Id. (citation omitted).  Municipal liability may spring from a single action.  See, e.g., Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004).

Here, other than merely repeating that the City failed to train and supervise its police officers, Guzman has failed to make any specific allegations to support the existence of any policy or practice.  Instead, the complaint contains boilerplate allegations of unconstitutional policies and practices.  As articulated above, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient to plead a claim.  Iqbal, 129 S. Ct. at 1940.  Consequently, Guzman's claim against the City is also dismissed.

CONCLUSION

The defendants' February 13, 2011 motion to dismiss is granted.  The Clerk of the Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          July 7, 2011

```
                         _____
                                 DENISE COTE
                         United States District Judge
```

Copies sent to:

Armando Guzman, Sr.
955 E. 163rd St. Apt. 2B
Bronx, New York 10459

Brian J. Farrar
City of New York Law Department
100 Church Street
New York, NY 10007